2023-40216, Cole v. Collier. We'll hear from Ms. Montez. Good morning, Your Honors, I may please the Court. Maris Montez for Appellant Keith Cole. With the Court's permission, I'd like to reserve five minutes for rebuttal. Certainly. Thank you, Your Honor. Keith Cole is a 70-year-old, long-time faithful follower of the Baha'i religion. As part of his religious beliefs, Mr. Cole must eat non-pork meat with every meal. And while he's been incarcerated in the Texas Department of Criminal Justice, or TDCJ, prison officials have denied him the ability to eat non-pork meat in a substantial portion of his meals, and required him to pay for his non-pork meat on a regular basis through commissary. This amounts to a fine on Mr. Cole's religious practice, something that the Supreme Court, this circuit, and sister circuits have all held violates RLUBA. The District Court granted summary judgment in defendant's favor because it found that the defendants had a compelling interest in violating Mr. Cole's religious rights. The defendants, like the 12B posture, isn't it? The summary judgment. Oh, it's the summary judgment. But did they come forward with any evidence of the actual cost and all of the kinds of things that you would expect if you're going to say that it's too expensive? No, Your Honor. They provided no— There's no evidence of it. Is there? No. They provided no evidence whatsoever, which is exactly— They don't even have a declaration from the prison that says this would cost us $3 million more and— Nothing. Yeah. There's no evidence provided by the defendants. And that's exactly why the District Court erred in simply finding that there was a compelling interest only because they asserted that there would be an additional cost. But that isn't sufficient to meet their burden, that they have a compelling interest and that they advance it in the least restrictive means, especially when all inferences must be made in Mr. Cole's favor. The same is true with least restrictive means. The defendants provided no evidence that they grappled with the alternatives that Mr. Cole provided. And time and time again, defendants articulated this kind of tired trope of if I accommodate you, it means I have to accommodate everyone. But this reasoning was explicitly rejected in Holt v. Hobbs and by this Court in Mouzazadeh v. TDCJ. To the extent that Jones v. Shabazz used this reasoning, has that been taken away by Holt v. Hobbs? Yes, exactly. They made that reasoning in Jones, but that was before Holt v. Hobbs. And Holt v. Hobbs explicitly said that the Court should not assume this kind of classic rejoinder of if I accommodate you, it means I necessarily have to accommodate others. Judge? Oh, I'm sorry. Well, I was going to ask about substantial burden. I mean, the District Court really didn't make a finding on substantial burden, right, if I remember right. It just assumed it and went to compelling interest in least restrictive means. Is there a substantial burden here? I mean, in other words, I'm thinking of Mouzazadeh where there's a note that says, well, 16 of the 21 meals were provided and he had to buy five of them. And that's the case here, right? Two-thirds of the meals don't violate his faith. They're not really implicated. He could choose these other things and he could also buy meals that do comply. So is there a substantial burden here? Well, yes, Your Honor, there is a substantial burden. How do we know that? Well, it is a substantial portion of his meals. It's a third of his meals. Well, what's your case to support that? Because Mousazadeh seems to cut the other way. Well, Mouzazadeh holds clear that— Maybe I'm mispronouncing it. No, Mouzazadeh is clear that it would be a substantial burden to make an incarcerated person pay for their religious meal. But that was all the meals. And there's a note—I'm looking at page 794—that noted that they were distinguishing, I guess, the Patel case, maybe, where 16 of the 21 meals of the week were okay. He had to buy five of them. And they said, well, that would be different. And Patel has very limited value for this court. It's, of course, out-of-circuit precedent. It was decided before Holt v. Hobbs— I'm talking about the principal. I'm just going after substantial burden. He doesn't have to pay for all his meals. Two-thirds of them are okay, right? And he does have options that would be okay if he just doesn't—I guess it has to have meat or there's a question of how he would provide that, right? Right. And the Supreme Court in Burwell v. Hobby Lobby made it clear that to require an entity or a person to pay for their religious practice would be a substantial burden without inquiring necessarily into how much. But I'm going after the quantity, the relative—I mean, if two-thirds of the meals are okay and he has to pay for one-third, is that a substantial burden? Well, again, it's clear from the Supreme Court precedent that that would be a substantial burden. And you can look at other sister circuit case law as well in many other cases. For example, in Abdul Hasib in the Tenth Circuit, in Ackerman v. Washington in the Sixth Circuit, in Jones v. Carter in the Seventh Circuit. All of those cases— Obviously, you like the out-of-circuit cases when they support, but not Patel when it might cut against you? Well, some of those cases were decided after Holt v. Hobbs, which gave more instructions about the substantial burden and the appropriate analysis that should be taken. And the ability to pay was not analyzed by this court in Mouzazadeh. It was never even inquired into, but it was analyzed in the compelling interest in terms of how much it would cost for defendants to provide these religious meals. So that seems to be the appropriate place to analyze how much the cost would be. Is that developed in the record also? I mean, we just talked about compelling interest and least restrictive means, the evidence there. But is this developed in the record? The substantial burden?  Well, Mr. Cole said that it has cost him hundreds of dollars every year to pay for his meals. And so over his lifetime, he's incarcerated for life, that will be thousands of dollars. And if you look at a recent decision by this court in Lozano v. Collier, Judge Oldman has a concurring opinion where he explicitly kind of gave this principle where prisons have to accommodate for prisoners in their religious beliefs, which means that prisons must assume some costs. And so that means that it's on the burden of the prison to provide everything that a prisoner must need, including things that are required for religious practice. If Cole was provided non-pork meat free of charge from the commissary, would that solve this problem? Is that what you're seeking? Or do you require them to actually change the menu? No, there isn't a whole change of menu that's necessary. I think that would be a very reasonable alternative for Mr. Cole. It's not something, again, that the defendants asserted or provided. That might be the least restricted means, that if it's $500 worth of non-commissary meals that they have to let spot him, that would solve his problem, right? So it could be solved with a $500 a year expenditure by the prison, is that right? Right, Your Honor. Yeah. I think there would also have to be, Mr. Cole also asserted an additional burden on him, which is that he faces disciplinary action when he takes the food purchased in commissary. He has to be allowed to bring the food with him. Right. Yes. Well, he wasn't the only one. There were a number of prisoners who had dietary problems. Right. Well, Mr. Cole provided names of other incarcerated people who do not eat non-pork meat, and that was as a means to offer the defendants a cost-saving technique to . . . because TDCJA for some reason provides pork meals for everyone in the prison instead of accounting for people. Under the Atkins test, your position is that the jail fails the Atkins test? Yes, Your Honor. Under the Atkins test, the defendants are failing to provide an essential benefit here, a religiously sufficient food, only to Mr. Cole because he's the only one required to pay for his commissary, or pay for religiously sufficient food. The government has to provide . . . demonstrate that there's no cheaper alternative. Yes. Yes, exactly, Your Honor. They have to . . . as the Supreme Court has held, the least restrictive means is a demanding standard. If there are lesser restrictive means, the defendants must take it. Mr. Cole presented a number of other options, including accounting for, as I said, those 65 people who do not eat pork, and they could save money that way. The alternatives that he provides are very low cost. It's simply a beef hot link, a can of tuna, a non-pork lunch meat, things that likely the prison already has available. This list that we're talking about of the prisoners who want the pork-free diet request due to religious beliefs, was this just . . . were these all people who need this religious accommodation? I thought these were people that were willing to forego pork in order to be supportive of him. Exactly, Your Honor. So they're not . . . some of these people might be able to eat pork, both religiously and dietarily, but they just wanted to say, we will give up our thing because we think his interest is really important. They're his friends, basically. Yes, Your Honor. Is that . . . Exactly. What did the district court say about this in analyzing the least restrictive means? Well, the district court, I don't believe, specifically pointed out to this list, but did rely on Jones v. Shabazz in saying that in accommodating Mr. Cole, that it would necessarily mean that they would have to accommodate others, which again . . . But that's not good law anymore, is it? No, Your Honor. Again, under Holt v. Hobbs, it's clear that the court cannot make that kind of analysis. Are there religious . . . are there people who are in the record, are there people who have non-pork meat for medical reasons? Mr. Cole. Does the record support that? Yes, Mr. Cole has raised that other individuals in the medical unit are able to receive the exact diet that he's requesting. Why wouldn't that be . . . show that it's able to be accommodated? Like when we have those religious beard cases, if you let people have the beard because they have that skin condition, that's a famous case, which I can't think of the name of right now. But because they have a skin condition, they get to have a beard, so you can't tell the other people that for security reasons, you can't have a beard for religious reasons. I'm sure the government attorney will be able to remind me the name of that case. Why wouldn't that case also apply here? Well, yes. I think that reasoning would very well fit in with this case. There's no reason that the defendants have offered. Mr. Cole has provided that alternative at the summary judgment stage and the defendants never grappled with that alternative. What did the district court say about that? Because that's usually the easiest case. If you let some people skirt the general practice . . . skirt, I don't mean it in a derogatory manner. Avoid the general practice because of health reasons or any other reason, you can't treat religion as a second-class thing. What did the district court say about that? The district court didn't really grapple with that either, which is exactly why it aired in its opinion. It really just relied on pre-hold cases like Jones and assumed that other people would need to be accommodated. The defendants didn't meet their burden and still somehow the district court granted summary judgment. Of course, in this court's decision, also in Olivi-Stevens, the defendants similarly offered that kind of reasoning that they needed to accommodate other people in a case where an incarcerated person was requesting a kufi. The defendants offered this justification that other people would need to wear headbands or would request that. This court held that that was simply conjecture because they didn't offer evidence such as a survey or a list of people who would need that accommodation. Defendants didn't do that again in this case. It was an error for the district court to simply assume that there was a compelling interest here, especially when Mr. Cole offered very reasonable alternatives and they didn't even address it at all. I see that my time is running out. If you all have questions, I'm happy to answer them. I think we have your argument and you've saved time for rebuttal. Thank you, Ms. Mudd. Thank you so much. Mr. Cole. No relation. Thank you, Judge Elrod, and may it please the court. Let me start with this. I agree with Ms. Montes and I agree with what you were just suggesting at the top of the topside argument. Judge Elrod, this court can't affirm the judgment below on the basis of least restrictive means compelling interest analysis precisely because there isn't any evidence in the record, as you rightly say, that bears on what the cost would be to the prison. However, and it is a big however, I don't think that means the court should reverse. To the contrary, I would submit that the most straightforward way for the court to resolve this case is on the threshold substantial burden prong of the RULA-UPA analysis where Mr. Cole bears the burden of proof and where we would submit he didn't carry it. And so it's to that dispositive substantial burden prong that I'd like to turn. Judge Wiener mentioned the Adkins case, and I know he's familiar with that since he wrote it. But I think the standard there for substantial burden as articulated is where a prison regulation or policy prevents the adherent from enjoying a benefit that is not otherwise generally available, it does not work a substantial burden. And I think he— Can I just—so you're giving up sections two and three of your brief, basically? You're conceding that those are losers? That's very admirable, actually, although it would be good to have known it ahead of time. But I admire a lawyer who's very candid with the court. Well, yes. Candidly, I appreciate that, Judge O'Rourke. Candidly, I didn't write the briefing, and I came to this case sort of similar to you a few weeks ago and looked at it and just—I agree, there is no evidence. But again, I don't think it means reversal of the court. Do you think you went on prong one of your brief? I do, yes. And I— And you're going to tell us more about the Adkins case that you were mentioning? I was just finishing that up. I was laying out the standard, which is that there is not a substantial burden if there's a policy that merely prevents an adherent from enjoying a benefit that is not otherwise generally available. And so I think this turns on what it means for a benefit to be generally available. And I do think the Moussassada case that you were discussing at the top, Judge Wilson, is helpful on that. There, the court recalled what was an issue was kosher diets for observant Jews. And what was going on there was the prison was giving for free kosher diets to any observant Jew that wanted it. It was at the Stringfellow unit, but the prison was willing to transfer any observant Jew that wanted it to that unit to get that meal for free. And the problem in that case was that only Mr. Moussassada was being forced to pay for his kosher meals because he was in a higher security unit, the Stiles unit. Contrast that. I thought that there was a lot of history there, too, though, where that originally wasn't the case. The Stringfellow unit was sort of a reorganization and a response because nobody was getting accommodated, right? And they were all basically having to buy all their meals or, I mean, I'm remembering a lot more than just whether it was the Stringfellow unit and then Moussassada was the only one excluded. But yes. Yeah, that's right, Judge Wilson. There's a lot of history there about how it worked out in the Moussassada case. But there is this note that I asked counsel Opposite about in Moussassada, or I'm never going to pronounce it correctly. We may not know. But there is this note in there that says, well, citing Patel, their 15 of the 21 meals were okay and you had to pay for some of them. And it sort of says approvingly, and it kind of hints, but it's only a hint. Otherwise, the holding of that case, Moussassada, is you've got to be able to show, and it was what, $8,000 in terms of what the burden on the prison system would be to provide a kosher kitchen, and it wasn't enough to outweigh the substantial burden. Well, I think that was on the least restrictive means compelling. Right, but I mean. We don't get to if we get to substantial burden. But how do we draw the line? I mean, exact questions I asked counsel Opposite. Well, we draw it in this way. I mean, a couple of the cases, Moussassada, Patel, and Jones is from the Eighth Circuit, and Jones versus Carter talked about, we're looking at, in this case, a cost-based claim. So I'd point you to ROA 14, which is Mr. Cole's complaint. He says these meatless meals, and again, we're talking about maybe 7 out of 21 meals, so we can bracket 14 out of 21 of them are compliant, which, as you say, sort of takes away one of the bases for distinguishing the Patel case, which I think is on point here. But ROA 14, as I was just saying, Mr. Cole says these meatless meals often forced plaintiff to spend his own money to purchase meat to go along with his meals. Through the years, this cost has become, it says substantive, but I think he means substantial. So this is a cost-based claim. And so the way we look at this is we make a decision based upon the financial need. And we have evidence in the record. I think you were asking maybe Judge Elrod, what's the evidence in the record on substantial burden? Well, what we have in the record is Mr. Cole's commissary records. We have his trust fund. $500 a year. Do you disagree with that? I think it was something like that, yeah. $500 a year is he's having to spend that the people in the medical unit that get the port free meal don't have to spend. Well, two things about the medical unit, and I think that question goes to the generally available benefit. One, all we have in the record is a statement and a pro se complaint about this medical unit. We have no evidence of that record. So for number one. Doesn't that suggest we should remand it? I don't think so because he bears the burden on the substantial prong analysis and his burden. So it's $500 a year. And somewhere, I guess, in the briefing, it makes the point that, well, that's what it costs to bring this appeal. But that's every year. So where is the line that you, is it $1,000, is it $10,000, is it $15,000? It depends upon the showing from the prisoner about the financial need. Recall, he's saying the cost is substantial. I can't bear it. Do we look at the worth of the assets of the prisoner? We do. Yes. So it's a sliding scale. It's a fact. As they like to say, the RLUIPA test is very individualized. We look at the individual circumstances of every individual plaintiff. And when we look here, we have his financial records, and we know he can afford it. And that's not just my sort of superimposing on the statute. That's Patel. So he can't eat it with his meal? Well, that's not his claim, and I want to be very careful about that. His claim is not that I need to eat the meat in the dining hall with the meal. That's part of the claim. It is not an ROA-14, as I just read to you. It's a cost-based claim. There's no temporal element here. To be sure. There could be a temporal element. Yeah, but I thought, I'm sorry, I thought the same thing as Judge Elrod, that he could either choose to have meat, or he could choose to have the meal served in the cafeteria. That's what he said in his complaint, but there's no evidence I would submit of that. To the contrary, I mean, there's, we put into our— Does he face discipline if he buys meat and brings it into the cafeteria to pair with the rest of his food? I'm not aware of that. There is no evidence in the record of such a policy. Again— Did he say that? He says that in his statement. He has a declaration, right? He does not have a declaration. He has a statement in a summary judgment motion, and a statement that's unsupported, unsighted. Importantly, on the— Well, why didn't he send it back to the court? Because they didn't even look at this element. The magistrate judge specifically set this substantial burden to one side and said, we don't even need to deal with this. They are much better equipped to parse through this and see what the actual evidence is on what the burden is on him, aren't they? Well, I would submit that you have the evidence in the record, and you can look at it, and it's undisputed. Again, we're at summary judgment. It's undisputed that he can afford the 95 cents a day. That's for the one meal a day. It's undisputed. We have the commissary records, and this Court can affirm on any basis that was argued below, which it was, and supported by the record. We have both of those things here. Again, it's not just me saying there's this financial issue. This is—the Patel case made a carve-out. It said he can afford the meal, and so that's the Eighth Circuit. And so he can— Not like any of the modern kosher meal cases. I think the— Gone through and—do we say, oh, well, you're rich enough, so you should buy something that's kosher and have it sent in to you or something? We don't do that to any of these prisoners. The kosher meal cases are very different for two reasons. Number one, an observant Jew cannot eat the non-kosher meal that's served. Similar in the Muslim faith. They can't eat—an observant Muslim can't eat the haram or non-halal meats. That's not the case here. He can certainly eat the vegetarian meals. He would just have to go back to his cell and eat the meat there. That's the—and there's no substantial burden there. And it's a cost-based claim, again. I want to be very clear, this is not a claim based on some sort of temporal, I have to eat the meat in my cell, and that's a substantial burden. That's a claim, to be sure, in Ackerman, the Sixth Circuit case. That was a claim made. And here's how we know that's not at issue. He says that there's—that there would be some sort of disciplinary action. Well, it's not in the record, but if it was, you would expect him to be citing that disciplinary policy in his complaint and—or in his grievance. And that's important for the PLRA, because that type of claim is not exhausted under the PLRA. So if he wants to make a claim that says he's substantially burdened because he can't eat meat brought in the commissary to the dining hall, that's a fine claim to bring. That's a claim that was at issue in the Ackerman case. It's just not the claim that appears in his grievance or his complaint or anywhere in this case. What— He would win on that claim. I'm sorry? He would win on that claim, wouldn't he? Well, we don't know. So this is—this is the point, right? Maybe the prison would be willing to accommodate that. But I don't know. It hasn't been exhausted. It hasn't been properly grieved. What do you do—what do you do with the observation in Musa Seyda that Patel, the Eighth Circuit, uses a different definition of substantial burden than we do? I mean, that limits its reach, right? I'm not sure that the difference in standard really makes any tangible difference here. I mean, this is turning on the generally available benefit language, and the Court noted that that's not really at issue in the Eighth Circuit. But I think that, again, as I mentioned, cuts in our favor here because the all meat, never pork diet is not generally available at the prison. There is no other prisoner—he's not the only prisoner. There is no other prisoner that is being provided this, and I see you're going to bring that list up. But that's not a list of people that are being provided this diet. Those are people— No, I know. I'm going to ask you. What about this list? These people—all these other prisoners say we should forego pork. And I know they have—I don't know if this is one of the units with the pig farm, but I think they ship the pork around between because they have these pig farms, which is perfectly legitimate, and I'm not critical of that in any way. But if all these people are willing to do it, why can't they just adjust the menu? And we don't even have to get to that because he could be accommodated with $500 a year. Well, that kind of sounds in the least restrictive means compelling interest analysis, which I'm saying we don't get to on the substantial burden analysis. But that, as you said at the top side, I mean, that's not—they're not making religious claims here, so I'm not sure what relevance that list has. Maybe it has some relevance to sort of least restrictive means analysis, but again, I'm not arguing that here. I'm still not sure why the medical people are not included in the general. Well, because that's not generally available by almost definition. Well, how many people are in the medical compared to the general? I don't— Well, I have no idea either, and that was his burden to come up with at summary judgment. And again, all you have in the record is a statement in a pro se complaint. That's not competent summary judgment evidence, and again, I want to be clear, he bears the burden of proof on this prong, not the prison. So if he wanted to come forth with evidence that this was not generally available and that there were these medical prisoners, he could have done that, but he didn't. That was just a throwaway statement in a pro se complaint. Again, that's not competent summary judgment evidence. But again, even if you want to overlook that, I'm not sure how that shows the benefit is generally available. Again, going back to Musa Sada, the benefit there was generally available because it was available to anyone that wanted it. By definition, an exemption or an exception is not that. So I don't think that shows that it's generally available. I would point on this sort of financial thing. I know, you know, I sort of had the same reaction to you, Judge Elrod, when I came to this. Gosh, we're talking about this benefit is going to turn on the dollars and cents in an account. And I had the sort of same reaction. But I think in considering it more, I think it makes perfect sense for two, the confluence of really two things. The first is, again, the cost-based claim. In the complaint, I'd point you back to ROA 14. He's making an argument from cost. I shouldn't be forced to pay for this. I should get it for free. So that's why, on one hand, it turns out to cost. The other thing is RLUIPA itself, which requires the sort of individualized inquiry. And the confluence of those two things is why I think this has this cost element to it. And I want to be clear, again, the record reflects that he can pay for this. He has thousands of dollars, hundreds of dollars in his account at any time. No doubt it would be different. Completely indigent? Would you not argue this?  Nope. Completely different. You would say he's substantial. Yes. So, if they brought an indigent person who complains about the same menu, they would win? They would win on the substantial burden prong, and then we would go to the least restrictive means of compelling interest. I don't dispute that. I'd go even further, Judge Elrod. If they could show, and I'm drawing this now from Jones v. Carter. If they could show, you know, a prisoner was being forced to choose between medical needs or hygiene needs or something like that, yeah, that's probably a substantial burden. But you don't have that case here. You have a case where the prisoner can, and this is an unquestionably affordable thing for him. That's the words of Chief Judge Wood in the Seventh Circuit in Jones v. Carter. Now, in Jones, you were faced with a situation where Jones cannot reliably afford to pay for the meat himself. Again, you don't have that here. So, what if he spent down his commissary account? If he made himself indigent? No. So, what if he, so next year he could bring this claim if he, all the money's gone? If he, if you're suggesting that he's going to become indigent next year to bring the claim, then you'd be faced with a very different case, sure, but I mean, I don't think that's going to happen. I mean, but we just, you're just, it's, you're saying the case turns on the fact that he has money in his account. Because of two things, again. The thing, the first thing is the nature of the claim he's bringing. He's the master of his complaint. He's brought this claim in. Again, I'm going to point back to ROA 14 and RLUIPA itself. Now, one other thing I want to mention is, is they analogize this to a fine or something like that. And they point to Hobby Lobby. There are two points on that. One, this is not in any way, shape, or form analogous to a fine. I mean, you're, I'm sure you recall from Jarkezia, fine is punitive. It's designed to punish an individual for some sort of bad behavior. That's not this here. This merely making food available in the commissary for a price to anyone. Not just religious plaintiffs. It is not in any way analogous to a fine. And I think they're getting that language from Hobby Lobby. But you'll know that in Hobby Lobby, we were talking about half a billion dollars of fines for noncompliance with an ACA mandate. We have nothing on that. Very different. Very different. But, okay. Can you help? What RLUIPA case does this cost basis define? It's not a substantial burden. Give me the, what circuits do that? So, I would give you, Patel looks at that, and that's the Eighth Circuit case. There's Jones v. Carter, which is another one from the Seventh Circuit. There's a nice discussion between Chief Judge Wood in the majority and Judge Brennan in the dissent on that. Those are the two cases I'd point you to that do that. But we haven't opined. No, I think this case now does squarely present that question to you. It was sort of. Is there a circuit split? I don't think there's a circuit split on it, no. I think the facts of those two cases are just different. All of the cases recognize that in the context of indigency, you'd have a different case. You cited both of those. You cited Patel, but did you cite the other one in your brief? I believe the other side cited it. I'd have to, I can look at this right here. It's been cited. Yeah. In fact, they cite it because, I know they think it's favorable because the outcome in that case was a violation of RLUIPA, a substantial burden, but notably that's because Mr. Jones in that case couldn't, quote, reliably pay for the food. And in the Seventh Circuit, she actually, Judge Wood, carved out, we have no need here to decide whether a truly negligible or unquestionably affordable cost would be similarly subject to attack under RLUIPA. I think that question is now presented to this Court in a way that it wasn't in Musasada, again because the kosher food was generally available. Here it's not. And so the Court is, I think, now confronted with the interesting question about what do we do? Is it an actually substantial burden? I mean, you'll recall the text of RLUIPA says substantial burden. It's not burden simpliciter. And so that language, substantial, must mean something. And in the case of a cost-based claim like my friend on the other side is bringing, I think that does require an inquiry into the ability to— But haven't we made substantial less substantial over time in the Fifth Circuit? Not in this context, certainly. I can't speak to the whole body of the Court's precedent, but I do think if that's the case, I mean, I still think substantial does need to mean something, otherwise it's burden simpliciter and that I think does violence to the language in Congress that Congress passed. So I think you have our argument. I think the Court should affirm on substantial burden grounds, but I'm happy to take any further questions in the remaining time I have left. But if not— Thank you. We have your argument. We appreciate, again, your candor with the Court. So I'd like to address some of the points made by my friend on the other side, especially regarding—my friend made an argument about whether the benefit was generally available or not in trying to distinguish between Musazadeh on that account. And I can read you the exact text of Musazadeh, which describes the generally available benefit, which is—the Court says, like the unemployment payments at issue in Sherbert, food is an essential benefit given to every prisoner, regardless of religion. So food is the essential benefit. And based on Sherbert, Thomas, and Atkins, denial of religiously sufficient food when it is generally available would constitute a substantial burden. So there, it's clear that this Court has conceptualized the generally available benefit as just simply providing religiously sufficient food to incarcerated people, or providing a nutritious diet free of charge. But they do that. So what about counsel opposite's argument that this is a cost-based claim, and it's not a substantial burden for him to pay this cost, this $500 a year? Well, he's not able to actually eat food that meets his religious requirements in a third of his meals. So he's denied that ability. No, but he is. He just has to pay for it. Right. And again— I mean, is that per se a substantial burden? I don't think that's right. Well, again, I'd say in Burwell v. Hobby Lobby, it was clear that the Court there held that a fine on religious practice is a substantial burden, and they're— But this is the prison context, so what's the case that tells us that any financial burden borne by a prisoner, regardless of indigency and all that sort of thing, is a substantial burden? Well, my friend on the other side cited Jones v. Carter, and I welcome this Court to look into Jones v. Carter, because it explicitly makes this kind of analysis into whether the Supreme Court should go into whether someone can afford a religious diet, and it held that showing indigency is not required. And it made a very good analysis based on Burwell v. Hobby Lobby that the Supreme Court chose not to delve into whether someone can pay for a fine on their religious practice. But again, it's not a fine, it's an additional cost. The food is available, so where is the line? I'm just grappling with where the line is, because it's not de minimis, right? If it was a penny or a nickel or a dime or a dollar a year or something like that, I mean, I don't think you could come in and say, I want to be accommodated substantial burden. Could you? Or is it all relative? I mean, counsel opposite basically says it's a sliding scale. Prisoner can afford it, then it's not a substantial burden because he can basically make up for the difference. But as Judge Elrod was asking him, indigent prisoner comes in, different case, and he wins. I mean, I'm a little suspect about that also, but help me draw the line. Right. Well, yeah, I think that where that line would be might be different in another case, but it's clear that in this case that it is substantial. It's hundreds of dollars on Mr. Cole and requiring an incarcerated person to choose between following their religious practice or perhaps paying for medical needs or to communicate with their family is an impossible choice in a place where Berlupa has explicitly expected expansive protections of religious exercise. And Holtby Hobbs explicitly made that the case. And so, you know, I think it would also mean that delving into individual's financial means is always changing, as Judge Elrod suggested, that perhaps Mr. Cole has some financial means now, but in a year, if he has an emergency, he won't have that. And so does that require an incarcerated person to come back to court and make a new claim? It would just make the standard inapplicable or difficult to apply consistently in, again, a context where Congress expects expansive protections. Okay. Is it part of this case that he would have to sneak commissary food into the chow hall? Is that part of this case and he would face discipline? I thought that was the record on appeal at 257, 258. Yes. But if that isn't, but your friend on the other side, Mr. Cole, says that's not part of this case. And he said that would be very important if it were a part of this case. So you need to tell us whether that's part of this case or not. Yes, Your Honor, it is part of the case. It's in the documents, as you cited, in 257, he included this information in the opposition of summary judgment and included the- Is there competent summary judgment evidence substantiating it? Well, he did raise it. The defendants didn't grapple with it, didn't, if that were not the case, it would have been very easy for them. It bears the burden. So what's the evidence that he offered that substantiates that? I believe he provided the policy, but, and so- The policy says, don't bring food in from the commissary, does it say that explicitly in the policy? I'm not exactly sure. That's not in the record evidence. We'll have to look through the record evidence. Yes, and if it's that, if Your Honors believe that it is appropriate to remand to do that kind of fact-finding, that's acceptable as well, but I think just, even just in requiring Mr. Cole to pay a fine at all, then it is a substantial burden on him. I see that my time's up. Okay, you need to wrap it up. For these reasons, we request that this court to reverse and remand Fortra. Thank you, Your Honors. Thank you. Counsel.